UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSEPH ANTONETTI,

    Plaintiff,

v.

DWIGHT NEVEN, *et al.*,

    Defendants.

Case No. 2:08-CV-01020-KJD-LRL

**ORDER**

    Presently before the Court is Defendants' Motion to Dismiss (#13). Plaintiff filed a response in opposition (#15) to which Defendants replied (#16). Plaintiff then filed a Surreply (#17) without leave of the Court. Also before the Court is Defendants' Motion to Strike (#18) the Surreply to which Plaintiff failed to respond. Having read and considered the motion to strike, and finding good cause under Local Rule 7-2(d) and Federal Rule of Civil Procedure 12(f), the Court grants Defendants' motion to strike.

I. Procedural History and Background

    Plaintiff filed his initial complaint and application to proceed in forma pauperis on August 7, 2008. The magistrate judge approved Plaintiff's application on September 4, 2008 and reserved screening of Plaintiff's initial complaint. On December 22, 2008, Plaintiff filed a Motion for Leave to File Amended Complaint (#5). On September 16, 2009, the magistrate judge granted Plaintiff's

motion to amend, screened Plaintiff's proposed amended complaint and ordered it filed.[1] The magistrate properly disposed of several claims in the amended complaint and the Court denied (#23) Plaintiff's motion for reconsideration of that action on May 17, 2010.

Defendants have now moved to dismiss claims made against them in their official capacities for money damages, claims against Skolnik, Cox and Statler for lack of personal participation, and claims for violation of Plaintiff's Fourteenth Amendment Due Process rights and Fourth Amendment rights to be free from unreasonable search and seizure on qualified immunity grounds.

II.  Standard for a Motion to Dismiss

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two prong analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to

---

[1] Due to a clerical error, the Clerk of the Court filed Plaintiff's initial complaint at Docket No. 8. The Clerk should have detached Plaintiff's amended complaint attached to his Motion (#5). Accordingly, the Court will strike the initial complaint filed as Docket No. 8 and order the Clerk to detach and file the amended complaint which is the operative complaint.

2

relief." Id. at 1951.  If the allegations state plausible claims for relief, such claims survive the motion to dismiss.  Id. at 1950.

III.  Analysis

    A.  Eleventh Amendment Immunity

Defendants claim that by being named in their official capacity in this suit, they are immune from § 1983 liability under the Eleventh Amendment.  "Claims under § 1983 are limited by the scope of the Eleventh Amendment."  Doe v. Lawrence Livermore Nat. Laboratory, 131 F.3d 836, 839 (9th Cir. 1997).  "The Amendment . . . enacts a sovereign immunity from suit, rather than a non-waivable limit on the Federal Judiciary's subject-matter jurisdiction."  Idaho v. Couer d'Alene Tribe, 521 U.S. 261, 267 (1997).  "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state.  Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state both by its own citizens, as well as by citizens of other states."  Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted).  "Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court."  Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993) (quotations removed).

In Will v. Michigan Dep't of State Police, the Supreme Court held that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under § 1983.  491 U.S. 58, 70 (1989).  "Moreover, Will clarified that a suit against a state official in his official capacity is no different from a suit against the State itself.  Therefore, state officials sued in their official capacities are not "persons" within the meaning of § 1983."  Doe, 131 F.3d at 839 (citations removed).  In the instant case, Plaintiff asserts claims against the named defendants in both their individual and official capacities.  Accordingly, all claims brought in any defendant's official capacity are dismissed.

///

///

3

1    B. Lack of Personal Participation

2    Defendants also move to dismiss the claims against Defendants Howard Skolnik, James Cox,
3 and Jenny Statler[2] for their lack of personal participation in the remaining claims.  In order to be held
4 liable under Section 1983, a person acting under color of law must have personally participated in the
5 deprivation.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A supervisor is only liable for
6 the constitutional violations of his subordinates if the supervisor participated in or directed the
7 violations, or knew of the violations and failed to act to prevent them."  Id., (citing Ybarra v. Reno
8 Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984)).

9    Here, having reviewed the allegations of Plaintiff's amended complaint, the Court finds no
10 allegations that Defendants Skolnik or Cox personally participated in or knew of any constitutional
11 violations involving Plaintiff.  Accordingly, the Court dismisses the claims against Cox and Skolnik.

12    Defendants also assert that Defendant Statler, the law library supervisor, could not have
13 participated in Plaintiff's allegations in Count I of the amended complaint that his eighth amendment
14 rights were violated when prison officials ignored his serious dental needs.  However, Plaintiff's
15 complaint alleges that Statler was aware of and ignored his serious medical needs.  Additionally,
16 though Plaintiff need not submit evidence in support of his claims in opposition to the motion to
17 dismiss, as the Court assumes the truth of his factual allegations, Plaintiff has submitted a copy of a
18 grievance complaining of his dental problems that was denied by Statler.   Accordingly, the Court
19 must deny the motion to dismiss this claim against Statler.

20    C. Qualified Immunity

21    The defense of qualified immunity is available if the official's conduct is objectively
22 reasonable "as measured by reference to clearly established law."  Harlow v. Fitzgerald, 457 U.S.
23 800, 818 (1982).  A defendant is entitled to summary judgment based on the defense of qualified
24 immunity only if, viewing the facts in the light most favorable to Plaintiff, the facts as alleged do not

---

[2]The magistrate judge dismissed all claims against Statler, a law library supervisor, for claims relating to Plaintiff's access to the courts.

support a claim that the defendant violated clearly established law. Mitchell v. Forsyth, 472 U.S. 511, 528 (1985). This is a purely legal question. Id.; see also, Wood v. Ostrander, 879 F.2d 583, 591 (9th Cir. 1989). Qualified immunity provides "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question." Mitchell, 472 U.S. at 526.

Resolving the issue of qualified immunity involves a two-step inquiry. Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002) First, the Court must determine whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting Defendants from liability. Id. "If a constitutional violation occurred, a Court must further inquire whether the right was clearly established." Clement, 298 F.3d at 903 (quoting Saucier, 533 U.S. at 201) (internal quotations removed). If the law did not put the officials on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202.

### 1. Administrative Segregation and Due Process

The Court must grant Defendants' motion to dismiss Plaintiff's claims that Defendants violated his Due Process rights in his classification as a "high risk prisoner (HRP)" and his resulting confinement in administrative segregation. Defendants did not violate Plaintiff's Due Process rights, and even if a violation was found, it was not clearly established.

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003)(citing Sandin v. Connor, 515 U.S. 472, 486 (1995)); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)(holding that pre-sentencing prisoner had no liberty interest in being free from administrative segregation); Wagner v. Hanks, 128 F.3d 1173, 1174 (7th Cir. 1997)(it would be difficult to make disciplinary segregation more restrictive than the general conditions of confinement to count as an atypical and significant hardship). In this action, Plaintiff has pointed to no facts that would convert his classification and

confinement in administrative segregation into an "atypical and significant hardship". Serrano, 345 F.3d at 1078. Plaintiff's complaints are unlike the disabled plaintiff in Serrano, who was denied the use of his wheelchair, was confined in housing that was not designed for use by the disabled which affected his daily hygiene, toileting and sleeping, and was forced to drag himself around a vermin and cockroach-infested floor. The isolative inconveniences complained of by Plaintiff pale in comparison to those suffered in Serrano. In fact, the hardships complained of by Plaintiff, including isolation, difficulty accessing the law library, showering, and strip searches, are not "unexpected." Id. at 1079, n.6.

However, even if Plaintiff had a liberty interest in his classification and assignment under the facts of this action, the Court would still grant qualified immunity to Defendants, because none of the conditions Plaintiff complains of have been found by a court in this circuit to be an atypical and significant hardship that creates a liberty interest in a prisoner's classification and assignment. Accordingly, since no Constitutional right has been violated and, even if it had been violated, no clearly established law prevented the conduct, the Court must grant qualified immunity and dismiss Plaintiff's claims against Defendants.

### 2. Qualified Immunity and Strip Searches under the Fourth Amendment

The Court must grant Defendants' motion to dismiss Plaintiff's claims that Defendants violated his Fourth Amendment right to be free from unreasonable searches. Defendants did not violate Plaintiff's Fourth Amendment rights, and even if a violation was found, it was not clearly established. Here, Plaintiff asserts that strip searches conducted in his cell and in a shower stall every time he left his cell violated his Fourth Amendment rights to be free from unreasonable searches.

The searches Plaintiff complains of are no more unreasonable than those described in Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988) in which the Ninth Circuit held that the Fourth Amendment was not violated by Nevada State Prison's strip search policy which also required visual body cavity searches whenever an inmate left or returned to the prisoner's unit, from

1  recreation and contact visits.  Like in Michenfelder, no contact between the prisoner and guards is
2  being alleged in this case.  Similarly, Rickman v. Avanti, 854 F.2d 327, 328 (9th Cir. 1988), found
3  visual body cavity searches of prisoners in administrative segregation reasonable.  Like the searches
4  in those cases, the searches in this case are alleged to be conducted in as much privacy (Plaintiff's
5  cell and a shower stall) as reasonably possible.  Plaintiff's subjective distaste does not override the
6  prison's important objectives in maintaining safety and avoiding introduction of contraband.  See id.;
7  Michenfelder, 860 F.2d at 332-3 (collecting cases).[3]  Plaintiff's privacy rights, which are "impelled
8  by elementary self-respect and personal dignity", are limited.  Michenfelder, 860 F.2d at 333.  The
9  regulations here reasonably relate to legitimate penological interests.  See Turner v. Safely, 428 U.S.
10 78 (1987).  Thus, no constitutional right has been violated, and even if a right had been violated, the
11 officers were not put on notice that their actions were unlawful.  Accordingly, the Court grants
12 Defendants' motion to dismiss this claim, because Defendants are entitled to qualified immunity.

IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#13) is **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that the claims against Defendants in their official capacities are **DISMISSED**;

**IT IS FURTHER ORDERED** that the claims against Defendants Cox and Skolnik are **DISMISSED**;

**IT IS FURTHER ORDERED** that the motion to dismiss the Eighth Amendment claims against Defendant Statler is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's claims for violations of Due Process and the Fourth Amendment are **DISMISSED**;

---

[3] Just as Plaintiff's subjective distaste for disrobing in front of others does not override the prison's legitimate interest in maintaining safety and security, he cannot create a constitutional violation based on his subjective belief that Defendant Aragon is homosexual.  Plaintiff has alleged no specific action by Aragon, other than conducting the strip search.  Accordingly, Plaintiff's subjective belief does not preclude the Court from granting Aragon qualified immunity.

7

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (#18) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court **STRIKE** Plaintiff's Surreply (#17) and the complaint (#8);

**IT IS FURTHER ORDERED** that the Clerk of the Court detach and file the Amended Complaint attached to Plaintiff's Motion to Amend (#5).

DATED this 27th day of September 2010.

_____
Kent J. Dawson
United States District Judge